**Lee Charles MORTIMORE, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.,
Defendants.**

**No. C99–1264C.**

United States District Court,
W.D. Washington,
Seattle Division.

Nov. 8, 2000.

---

## ORDER

COUGHENOUR, Chief Judge.

Presently before the Court is Plaintiff's motion for class certification, which is opposed by each defendant. The Court has read and thoroughly analyzed each argument presented by the parties. In his reply brief, Plaintiff has changed his proposed definition of the class to one for a nationwide class on the breach of contract claims and a Washington State only subclass for the consumer protection and negligent misrepresentation claims.

After careful consideration of all the pertinent facts and information, the Court is prepared to grant the motion for class certification once the parties have had the opportunity to submit briefs and a proposed order that reflects the minor change discussed below.

### I. Background

The plaintiff class representative, Lee Charles Mortimore, obtained a Federal Housing Authority insured adjustable rate mortgage loan from Centrust Mortgage Corporation in April, 1988. The loan was secured by his residence in Kirkland, Washington. The loan documents which he signed were essentially form documents prepared by the Department of Housing and Urban Development ("HUD"), in accordance with the regulation codified at 24 CFR § 203.49.

It is the application of the "carryover" provision within that regulation that is the central issue in this case.

As the name adjustable rate mortgage suggests, the interest rate charged on a loan changes, in this case, every year. The actual amount of the change is typically tied to a published "index" of interest rate sensitive debt instruments such as U.S. Treasury bills, and typically involves adding a specified "margin" to that "index." Subsection (e)(1) of § 203.49 states that, "[n]o single adjustment to the interest rate can result in the change in either direction of more than one percentage point from the interest rate in effect for the period immediately preceding that adjustment. Index changes in excess of one percentage point must be carried over for inclusion in a subsequent year.... Adjustments in the effective rate of interest over the entire term of the mortgage may not result in a change in either direction of more than five percentage points from the initial contract interest rate."

The plaintiff alleges that the defendants only changed the interest rate when it benefitted them, that is changed it upwards, and did not do so when it benefitted the customer, that is change it downwards. The defendants argue that they were justified in refusing to make any downward adjustments because HUD eliminated the regulatory carryover provisions. Mortimore signed all of his contractual loan documents before the regulations were changed, and therefore sues for breach of contract, negligent misrepresentation, and for violation of the Washington Consumer Protection Act.

Mortimore's loan was assigned multiple times to a variety of banks, however he alleges that each defendant either miscalculated the appropriate interest rate or used the incorrect principal amount in calculating the monthly payments on the loan. One bank, Standard Federal, did actually adjust the interest rate downward for two months, however it later reversed it's action and wrote a letter to Mortimore explaining why it was going back to the higher interest rate. Mortimore protested this action, and sought the assistance of the HUD offices in Seattle

and Washington, D.C., as well as of both U.S. Senators for Washington state.

The HUD office in Seattle initially agreed with Mortimore that Standard Federal acted improperly in refusing to apply the carryover provisions, however HUD later changed it's position, and wrote a letter to Senator Slade Gorton attempting to explain the confusion. Mortimore has brought this purported class action on behalf of all others similarly situated in an attempt to require the banks to properly apply the carryover provisions.

## II. Proposed Class Definition

Plaintiff's amended proposed class definition seeks to have a class certified under Rule 23(b)(3) as follows:

> All persons who borrowed money, secured by Adjustable Rate Mortgages on real property, containing interest rate carryover provisions required under 24 CFR § 203.49(e)(1) or 24 CFR § 234.79(e)(1) (as in effect from May 8, 1984 through March 31, 1989) and whose note rate of interest was incorrectly adjusted and/or stated and charged when defendants did not give them the benefit of the carryover provision from October 23, 1992 through the present.

Plaintiff also seeks to have a subclass certified under Rule 23(b)(3) as follows:

> All persons who borrowed money, secured by Adjustable Rate Mortgages on real property located in the state of Washington, containing interest rate carryover provisions required under 24 CFR § 203.49(c)(1) or 24 CFR § 234.79(e)(1) (as in effect from May 8, 1984 through March 31, 1989) and whose note rate of interest was incorrectly adjusted and/or stated and charged when defendants did not give them the benefit of the carryover provision from October 23, 1992 through the present.

Plaintiff also seeks to have a class certified under Rule 23(b)(2) as follows:

> All persons who borrowed money, secured by Adjustable Rate Mortgages on real property, containing interest rate carryover provisions required under 24 CFR § 203.49(e)(1) or 24 CFR § 234.79(e)(1) (as in effect from May 8, 1984 through March 31, 1989) and who currently have those loans with defendants.

## III. Class Certification Standard

The legal standard for the certification of a class action is provided by Rule 23 of the Federal Rules of Civil Procedure, and the decision is within the sound discretion of the District Court. Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These four prerequisite requirements are usually referred to as the requirements of impracticality, commonality, typicality, and adequate representation. If these four prerequisites are met, it must then be determined if the potential class falls within one of the categories of subsection (b). Plaintiff has requested that the class in this case be certified under both (b)(2) and (b)(3). The plaintiff carries the burden of showing that all four prerequisites and subsection (b) are satisfied.

### A. Impracticality

This requirement is not challenged by the First Nationwide defendant, but is challenged by some of the other bank defendants. Plaintiff alleges that "hundreds of persons located throughout the State of Washington and likely throughout the United States" exist as potential class members against the defendants. The smallest likely number against any single individual bank is about twenty-seven, and the largest is almost six hundred.

■ "Although the party instituting the action need not show the exact number of potential members in order to satisfy this prerequisite, he does bear the burden of showing impracticability and mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)." 7A *Charles Alan Wright, Arthur R. Miller &*

*Mary Kay Kane*, Federal Practice and Procedure § 1762 (2d ed.1986). The plaintiff has received data from HUD, pursuant to a Freedom of Information Act request, that shows the potential size of the class against each defendant. Although exact numbers are not available, the plaintiff has met his burden of showing impracticality without mere speculation. The defendants have not offered convincing evidence that the numbers are realistically otherwise.

The Court finds that the impracticality prerequisite is met in this case.

## B. Commonality

■ In order to fulfill the commonality prerequisite, the plaintiff's allegations must arise from a common nucleus of operative fact, and the defendants must have engaged in a common course of conduct with respect to the plaintiff class. It is common for courts to write, "[t]he threshold for commonality is not high." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir.1986), *see also 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane*, Federal Practice and Procedure § 1763 (2d ed.1986) (stating that rule 23(a)(2) "does not require that all the questions of law and fact raised by the dispute be common."). Plaintiff has alleged that the defendants have all engaged in the same conduct, namely their refusal to apply the carryover provisions in the class members' contracts due to the allegedly binding authority of a later amended regulation.

The defendants agree that this issue is the "core contention" of the plaintiff, however they argue that the application of the laws of numerous states will prove to be too difficult for this Court to manage. *Defendant First Nationwide's Response to Plaintiff's Motion for Class Certification at 1–2, 12–18.* They point out that not every state interprets contracts in an identical fashion, and that the Court will have to delve into each state's idiosyncratic interpretations if it certifies a nationwide class.

The defendants fail to appreciate what the key issues in this case are and how they will be handled during a class action trial. Defendants have not contested Plaintiff's allegation that all potential class members have virtually identical form loan contracts. Therefore, once initial matters are dealt with, a trial would focus on the central contention of the defendants that they did not have to comply with the contractual carryover provisions because of the allegedly intervening authority of the amended regulation. Addressing this main issue is not going to plunge the Court into a fifty state analysis of contract interpretation like the defendants so fervently contend. Should the plaintiff survive that stage, application of that intermediate holding will not be unmanageable even if the class members contracts are governed by the law of states other than Washington.

■ To the extent that the defendants are arguing that the application of the laws of different states will make the determination of damages an unmanageable task for the Court, it almost goes without saying that the "'overwhelming weight of authority' holds that the need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate." *Wolgin v. Magic Maker Corp.*, 82 F.R.D. 168, 176, *citing* 5 Newberg on Class Actions § 8824(b) at 879 (1977); *see also Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57 (1976) ("The amount of damages is invariably an individual question and does not defeat class action treatment.").

The Supreme Court has even said that "contract law is not at its core 'diverse, non-uniform, and confusing.'" *American Airlines v. Wolens*, 513 U.S. 219, 223 n. 8, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (citation omitted).

The Court finds that the commonality prerequisite is met.

## C. Typicality

■ In order for the plaintiff to satisfy this prerequisite, his claims must stem "from the same event, practice, or course of conduct that forms the basis of the class claims and [be] based upon the same legal remedial theory." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1321 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35,

74 L.Ed.2d 48 (1982). The alleged course of conduct was described above, and the legal remedial theory advanced by the plaintiff would be practically, if not exactly, identical to that of the class.

■ The defendants argue that Mortimore is subject to unique defenses that render him an inadequate class representative. The supposedly unique defenses include a defense relying upon directives of the FHA as vindicating the actions of the defendants, failure to mitigate damages, laches, and a potential statute of limitations bar. Although it is true that, in the 7th Circuit, truly unique defenses can defeat class certification, they must be a "major focus of the litigation." *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir.1974). The first two defenses cited by the defendants are not unique to Mortimore, since they can be argued against practically any potential plaintiff in this type of case. The last two defenses are essentially the same, and cannot be said to be the major focus of this litigation.

■ Key to the typicality requirement is the need for the plaintiff representative's interests to be aligned with those of the potential class members. *Id.* On a very basic and elementary level, Mortimore seeks to have the defendants charge him what he believes to be the correct interest rate, and to make sure that they do so in the future for both himself and others like him. Given the present definition of the class, other potential members will most likely have the same form contracts as he, and the carryover provision will likely not have been utilized in their favor. Mortimore's endeavor to seek these changes and damages will work to the benefit of the other class members, should he be successful, and that is the crux of this requirement.

Therefore, the Court finds that the typicality requirement is met.

## D. Adequate Representation

■ The adequate representation prerequisite is composed of a two-prong test: 1) the named representative must be able to prosecute the action vigorously through qualified counsel, and 2) the representative must not have conflicting interests with unnamed class members.

Plaintiff seeks to have the law firms of Stafford Frey Cooper and Keller Rohrback L.L.P. appointed as class counsel. This Court is familiar with both firms and finds that they are well qualified to represent the class in this case.

■ The defendants' only objection to Mortimore as an adequate class representative is that since he alleges that some of the defendants only miscalculated the principal loan amounts and did not miscalculate the actual interest rate, he might not adequately represent those class members who will argue that those particular defendants miscalculated their interest rates. The fundamental issues regarding each defendant are the same, and the relief sought by Mortimore on behalf of the class addresses the concerns of the entire class. He seeks to obtain injunctive relief and monetary damages against all of the named defendants pertaining to the application of the carryover provisions in their loan agreements, and that would be the same goal as the class members that the defendants argue Mortimore inadequately represents. There is no antagonism between the interests of the named plaintiff and those of the class.

Therefore, the Court finds that the adequate representation requirement is satisfied. The law firms of Stafford Frey Cooper and Keller Rohrback L.L.P. are hereby appointed as class counsel, and Mr. Lee Charles Mortimore is appointed as the class representative.

## IV. Discussion

Defendants make a valid argument that can be addressed in the redrafting of the class definition. They argue that the language in the present definition that refers to potential class members "whose note rate of interest was incorrectly adjusted and/or stated and charged when defendants did not give them the benefit of the carryover provision" potentially requires a "mini-trial" on each borrower's claim. *Defendant First Nationwide's Response to Plaintiff's Motion for Class Certification at 23.* During the redrafting of the class definition, language can

be inserted that makes clear that these are merely the allegations of the plaintiff class members, and that the class definition does not necessitate a preliminary finding that the defendants are liable to each individual potential class member.

 Plaintiff seeks to have the class certified under both Rule 23(b)(2) and 23(b)(3), since he seeks both injunctive relief and monetary damages. It is clear that the defendants allegedly acted or refused to act on grounds generally applicable to the class, and certification of a 23(b)(2) class is appropriate.

 In order to be certified as a 23(b)(3) class, with the more stringent notice requirements and opt-out rights, the Court must make additional findings. It is clear to this Court that the questions of law or fact common to the members of the class predominate over any questions affecting individual members. Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure. See Cobb v. Monarch Finance Corp., 913 F.Supp. 1164 (N.D.Ill.1995) (citing Haroco Inc. v. American Nat'l Bank and Trust Co., 121 F.R.D. 664, 669 (N.D.Ill.1988)). It is also well settled that a class can be certified under 23(b)(2) even though monetary damages are sought in addition to injunctive relief. Probe v. State Teachers' Retirement Sys., 780 F.2d 776, 780 (9th Cir.1986).

 The use of a class action in this case would avoid duplicative lawsuits with potentially inconsistent results, and is a superior procedure to other available methods for the fair and efficient adjudication of the controversy. Due to the relatively small size of each individual class member's claims, it is likely that their claims will never be brought to court without use of the class action procedure.

In Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court stated that the predominance of common issues requirement under Rule 23(b)(3) "is a test readily met in certain cases alleging consumer or securities fraud." Defendants do not dispute that other courts have certified classes involving adjustable rate mortgages, Hubbard v. Fidelity Fed. Bank, et al., No. 91–3939 MRP (Cen.Dist.Cal.1997), Exhibit D to Griffin Declaration; Crowley v. Banking Ctr., 1992 WL 54557 (Conn.Super.Ct.1992), and that a settlement class against First Nationwide was certified by a different federal court. Whitford v. First Nationwide Bank, 147 F.R.D. 135 (W.D.Ky.1992).

As pointed out in 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 (2d ed.1986), "[i]n many ways the factors listed in the rule are interdependent and overlapping both among themselves and with the prerequisites." "The enumeration simply provides guidelines to assist a judge in deciding whether a class action best serves the interests of the litigants and the court. When applying these factors, the judge should reflect on the wisdom of allowing the action to be maintained as a class suit." Id.

The class is certified under 23(b)(2) and 23(b)(3).

## V. Conclusion

To say that the certification of a class action is no small matter would certainly be an understatement. The implications of this decision for all potential plaintiffs, each of the defendants, this Court, and numerous other people are fully appreciated by this Court. This decision is not entered into lightly. However, given the facts of this case, no decision other than to certify the class can be reached. Once the parties have submitted further materials regarding the revised class definition, an order certifying the class based upon the new definition will be entered.

The plaintiff is directed to submit a brief regarding the revised class definition, not to exceed four pages, along with a proposed order, within ten days of the date of this order. The defendants are directed to file a response, if any, not to exceed four pages, within five days of Plaintiff's submission. A reply, if any, shall be filed within three days of any response, and shall be no longer than two pages.

Defendant FDIC Receiver for Association's motion to strike Plaintiff's reply supporting motion for class certification is de-

nied. To the extent that Plaintiff's reply contained arguments regarding issues addressed in the summary judgment order that has already been entered, they were disregarded.

When class counsel are prepared to provide proper notice to the prospective class members, class counsel shall apply to the Court for an order approving the form of notice. *See* Fed.R.Civ.P. 23(c)(2). Until that order is entered, no person is authorized to direct notice to prospective class members.